# Bennett, Jr.'s, Guardian Ad Litem, et al. v. Cary's Executor and Trustee, et al.

### (Decided October 23, 1925.)

## Appeal from Daviess Circuit Court.

1. Trusts—Testamentary Trustee May Bind Infant Beneficiaries in Compromise Agreement Beneficial to Them and Approved by Chancellor.—Testamentary trustee may bind infant beneficiaries under a will in a compromise agreement, which is beneficial to them, and which has been approved by chancellor.

2. Trusts—Compromise Settlement with Contestant of Will Properly Approved by Chancellor as Being Advantageous to Infant Beneficiaries.—Where trustee of will entered into compromise settlement with contestants, which compromise was agreed to by all adults involved in settlement and approved by chancellor, held, on appeal by guardian ad litem of infant beneficiaries involved in settlement, that the chancellor properly exercised his discretion in approving such settlement as advantageous to children, where it was shown compromise avoided possibility of loss of en-

tire estate and assured infants of comfortable home and education.

CLEMENTS & CLEMENTS, BEN D. RINGO, LOUIS I. IGLEHEART and ALBERT B. OBERST, guardian ad litem, for appellants.

SANDIDGE & SANDIDGE, SLACK, BIRKHEAD & SLACK, G. H. CARY, WM. F. BENNETT and W. O. ATTY for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Michael Cary died in November, 1922, 81 years of age. He left a large estate, consisting in a great measure of small houses in the city of Owensboro, about eighty in number, and left as well some cash, stocks and bonds.

His only heir at law at the time of his death was his grandson, Cary Bennett, the child of his deceased daughter.

He left a will, dated May 5th, 1920, wherein he made some specific devises and provided a small income for his grandson during his life, and the remainder of his property to his great-grandchildren, the children of Cary Bennett. That will was probated in the county court, but Cary Bennett, the heir at law, appealed to the circuit court from the order of probate and contested the will upon the ground of mental incapacity in the testator. After a jury trial the will was rejected on the ground stated, and the executor and trustee, Central Trust Company of Owensboro, appealed from that judgment, and on March 27, 1925, that judgment was affirmed. 208 Ky. 281.

After the mandate was filed in the lower court, and that court had certified to the Daviess county court that the paper of May 5th, 1920, was not the will of Michael Cary, the Central Trust Company as executor and trustee offered for probate in the county court a carbon copy of an instrument executed by the testator in June, 1912, and a carbon copy of another paper purporting to be a codicil thereto executed in June, 1918, and asked that the two be probated as and for the will of Michael Cary.

Without objection those two papers were probated in the county court as the will of Michael Cary, and immediately thereafter the same contestant, Cary Bennett, the heir at law of the decedent, was again preparing to appeal from the order of probate and contest these papers as the will of the decedent.

In each of the wills referred to the Central Trust Company of Owensboro was designated as both trustee and executor, and the general tenor of the two instruments was the same, although there was some difference in the specific devises and other immaterial changes.

While Cary Bennett was thus preparing to prosecute an appeal from the order of probate of the last two instruments, he and the officers of the executor and trustee came together, and after many conferences and mature deliberation throughout the period of about a month they agreed upon the terms of a compromise settlement, and Cary Bennett agreed if the settlement became effective not to appeal from the order of probate.

The will of 1912, after making a number of specific devises, gave to his daughter, Bertha C. Bennett, who was then living, an income of $50.00 per month during her natural life, and directed that the same after her death should be paid to her son, Cary Bennett, during his life, and that after his death the same should be paid to his children for their education and support until the youngest of them should arrive at the age of 21 years, at which time his estate was to be divided between them, share and share alike. The codicil of June, 1918, dealt alone with a specific devise for life of a certain house and lot in Owensboro to Ada Cureton, and in no other way changes the original instrument.

So that under these instruments the children of Cary Bennett were the residuary devisees of decedent's whole estate other than the specific devises and the income provided for their father and grandmother, the latter of whom was dead.

Under the terms of the compromise agreement entered into by the trust company and Cary Bennett, the trustee and executor agreed to employ Cary Bennett permanently to look after the renting of the houses, collect the rents, and superintend the repairing of all the real estate belonging to decedent in Daviess county, and passing under his will, and Cary Bennett agreed to attend to such things in a businesslike and efficient manner, and promptly pay over all money collected, and render monthly statements. It was also agreed to furnish approximately $10,000.00 out of the estate to build a good, substantial home on a vacant lot for the use of Cary Bennett and his family during his life. It was likewise agreed that the executor and trustee should pay out of

the funds in its hands belonging to the estate all court costs and expenses of both parties in the first will contest, and in that then pending, and all costs of this proceeding, and should pay the attorneys' fees of the attorneys on both sides, aggregating $22,000.00.

As a part of the settlement Cary Bennett agreed at his own expense to maintain and educate his children until each had finished high school, or its equivalent, and that thereafter any higher education should be paid for by the executor and trustee out of the income from the estate. In consideration of the compromise and of the services which Cary Bennett agreed to render in looking after the real estate, he is to receive, during his life, in addition to the $50.00 per month given him by the will, one-half of all the net income arising from the estate. It was then understood that this compromise agreement was not to become binding upon any of the parties until the same had been in an equitable action submitted to and approved by the Daviess circuit court and subsequently by this court.

Such an action was filed in the Daviess circuit court setting forth in detail the facts we have recited, and alleging further that the estate consisted of about eighty houses and lots in Owensboro, together with cash, stocks and bonds and other securities; and that it was absolutely necessary for the trustee and executor to employ some one to look after the renting of the houses, to keep tenants in them, to collect the rents, to keep the houses insured, and to look after the repairing of the same, that the houses were numerous, and many of them of such character that it was necessary to collect the rents thereof weekly, and that the total value of the estate at that time was $350,000.00 or more.

It alleges that there were many difficulties and much uncertainty attending the matter of the probate of the last named will and codicil; that neither of the original papers could be found after the testator's death; that they were last seen in his possession on the day he executed the paper of May 5th, 1920; that it was possible to prove that they were in his possession on that day prior to the execution of that paper, but it was not possible to prove with exactness the time that elapsed after the papers were last seen in his possession and before the execution of the paper of May 5th, 1920. It is alleged that prior to that date the testator had interlined the will

of June, 1912, with pencil, and had made notations with pencil on the margin of the same, and had possibly run a pencil through some of the lines of the will; and it was likewise possible to show with some certainty the clauses of the will of 1912, which had been so marked or erased by the testator, and that such interlineations and erasures were reflected in the will of May 5th, 1920; that it was the presumption after the judgment setting aside the will of May 5th, 1920, because of testamentary incapacity, that such condition had continued thereafter in the testator, but that such presumption was subject to be rebutted by evidence showing a change of his mental condition thereafter.    It sets out that the executor and trustee were uncertain what might be shown as to the loss or destruction of the will of 1912, or the codicil of 1918, or the circumstances attending such destruction; that all the parties to the controversy were confronted with a long, tedious, expensive and uncertain controversy with respect to the probating of the two papers, with the outcome of such litigation in grave doubt.    That under these circumstances and because of the uncertainty necessarily attending the outcome of such a litigation the executor and trustee whose duty it was to preserve the estate, being confronted with the possibility that the entire estate might be lost to the beneficiaries under the will, deemed it to the best interest of the estate and of the beneficiaries to enter into the compromise with Cary Bennett.    Wherefore the plaintiff, Central Trust Company, executor and trustee, and Cary Bennett prayed the advice of the chancellor with respect to entering into such compromise agreement, and that the action of the executor and trustee in entering into same be approved and ratified by the court.    To this action all the devisees and beneficiaries under the will and the trust company were made parties, including Cary Bennett, Jr., and William Bennett, the infant children of the plaintiff, Cary Bennett, being of tender years and each less than fourteen years of age.

Evidence was taken fully substantiating the allegations of the petition, including the reasonableness of the attorneys' fees involved.    The appointment of a guardian *ad litem* was made, and the approval of the compromise agreement by all the other defendants was given, and the chancellor then entered a judgment approving this compromise agreement, and adjudging that

same was for the best interests of all parties concerned, and from that judgment the guardian *ad litem* of the two infants and the two infants through their said guardian prosecute this appeal.

All of the adults involved in this settlement have given their approval to it, and the only question involved on this appeal is whether the settlement is advantageous to the infant appellants who are incapable of agreeing to it, except through their testamentary trustee.

The power of the testamentary trustee to bind infant beneficiaries in a compromise agreement, beneficial to them, and which is approved by the chancellor, is not called in question, and is not to be doubted. Slusher v. Weller, 151 Ky. 203. It is true that in the instant case there was no statutory guardian of the infants to agree for them, but they were represented in the settlement by their testamentary trustee named by the testator and entrusted with the management and control of the whole trust, and they were likewise apparently well represented by the guardian *ad litem* appointed for that purpose, as well as by the chancellor himself.

It is apparent from the terms of the settlement that the father of the infant appellants is provided a home for the care and comfort of the infants as well as for himself, and it is likewise clear that it was necessary for the trustee in the management of the trust estate to have some one employed to attend to these eighty houses, collect the rent, pay the taxes and superintend their repairs, and that Cary Bennett was fully capable of attending to those duties. So that the only thing under this settlement which is taken from the two infant beneficiaries is one-half of the net income of the estate which is paid to their father during his life as compensation for his services, and which they will indirectly get the benefit of by living with him. The compromise, therefore, not only avoids the possibility of their losing the whole estate, but it insures them a comfortable home and a good rudimentary education while they are growing up. In any aspect of the case the settlement was beneficial to the infants.

There is also evidence to the effect that the attorneys' fees, which it was agreed should be paid out of the estate, were reasonable. There were four or five eminent lawyers on each side of the controversy, and there had been in the original will contest a long and bitterly con-

tested trial in the circuit court, to say nothing of the able and extensive briefs filed on the appeal in this court.

That the chancellor in his judgment properly exercised his discretion in approving this settlement is not to be doubted.

Judgment affirmed.